John R. Keville *(Pro Hac Vice* to be filed*)*
Dustin J. Edwards *(Pro Hac Vice* to be filed*)*
William M. Logan *(Pro Hac Vice* to be filed*)*
WINSTON & STRAWN LLP
800 Capital St., Suite 2400
Houston, TX 77002-2925
Telephone: (713) 651-2600
Facsimile: (713) 651-2700
Email: jkeville@winston.com
Email: dedwards@winston.com
Email: wlogan@winston.com

David P. Enzminger (SBN 137065)
Matthew R. McCullough (SBN 301330)
WINSTON & STRAWN LLP
275 Middlefield Road, Suite 205
Menlo Park, CA 94025-1203
Telephone: (650) 858-6500
Facsimile: (650) 858-6550
Email: denzminger@winston.com
Email: mrmccullough@winston.com

Attorneys for Plaintiff
CONTOUR IP HOLDING, LLC

# UNITED STATES DISTRICT COURT

# NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CONTOUR IP HOLDING, LCC, | **Case No. 21-cv-2143** |
| Plaintiff, | **COMPLAINT** |
| vs. | **JURY TRIAL DEMANDED** |
| GOPRO, INC. | |
| Defendant. | |

**COMPLAINT AND JURY DEMAND**

Plaintiff Contour IP Holding, LLC ("Contour" or "Plaintiff")), by its undersigned attorneys, demand a trial by jury on all issues so triable and brings this action against Defendant GoPro, Inc. ("GoPro" or "Defendant") as follows.

**PARTIES**

1.      Plaintiff Contour IP Holding, LLC is a limited liability company organized and existing under the laws of the State of Utah, having a principal place of business at 26 Patriot Place, Suite 301, Foxboro, MA 02035.

2.      On information and belief, GoPro is a corporation organized and existing under the laws of the State of Delaware, having a principal place of business at 3025 Clearview Way, San Mateo, CA 94402.

3.      This is a civil action for infringement of U.S. Patent Nos. 8,890,954 (the "'954 Patent") and 8,896,694 (the "'694 Patent") under the patent laws of the United States, 35 U.S.C. §§ 101 *et seq*. True and correct copies of the '954 and '694 Patents (collectively, the "Asserted Patents") are attached hereto as Exhibits 1 and 2, respectively.

**JURISDICTION AND VENUE**

4.      This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. §§ 1331 and 1338(a).

5.      Venue is proper in this judicial district under 28 U.S.C. § 1400(b), because GoPro resides in this judicial district, has at least one regular and established place of business in this judicial district including at least its principal place of business at 3025 Clearview Way, San Mateo, CA 94402, and has committed acts of patent infringement complained of herein in this judicial district.

6.      This Court has personal jurisdiction over GoPro because of its presence and regular business activities in California and in this judicial district.

7.      This Court also has personal jurisdiction over GoPro because GoPro has purposefully availed itself of the privilege of conducting activities within this judicial district. These activities far exceed the requisite minimum contacts. GoPro's activities in this judicial district are continuous and

1   systematic, and give rise to the liabilities sued upon herein.

2       8.      GoPro's activities in this judicial district include, *inter alia*, designing and developing

3   infringing products in this judicial district, testing and using infringing products in this judicial

4   district, selling and offering to sell infringing products in this judicial district, and marketing and

5   advertising infringing products in this judicial district. GoPro has personally availed itself of this

6   judicial district by committing acts of patent infringement in California including, *inter alia*, offering

7   to sell and selling infringing products in this judicial district and inducing California retailers and

8   customers to commit such acts of infringement in this judicial district.

9       9.      On information and belief, GoPro does extensive business within the State of

10  California. On information and belief, GoPro earns substantial amounts of revenue through their

11  contacts with this judicial district.

12      10.     On information and belief, GoPro has also purposefully availed itself of this judicial

13  district by entering into agreements with numerous entities in California prescribing the conditions

14  under which the entities may qualify and remain an "Authorized Reseller" of GoPro's infringing

15  products. According to GoPro's website, GoPro has numerous authorized resellers of its infringing

16  products in California and in this judicial district.

17                          **INTRADISTRICT ASSIGNMENT**

18      11.     This is an intellectual property action subject to district-wide assignment pursuant to

19  Local Rule 3-2(c) and 3-5(b).

20                                  **BACKGROUND**

21                          **CONTOUR AND ITS PATENTS**

22      12.     The claimed inventions of the '954 and '694 Patents were conceived in December

23  2009 by a team at Contour, Inc. who determined that wireless preview and control would be a

24  beneficial and distinguishing feature in the point-of-view (POV) camera industry.  In order to

25  maintain their small size, POV cameras generally lacked a preview screen; in addition, a key feature

26  of such cameras was that they could be mounted on equipment or the user's body which in turn

27  made it difficult, if not impossible, to see or configure the images captured by the camera once

28  mounted if a preview screen was integrated into the POV camera. The tradeoff of being able to

conveniently mount a small POV camera before performing an activity meant that users were never aware of what they were capturing until after they had completed their activity. People were using these POV cameras by, for example, mounting them to helmets or their bodies prior to performing an activity or competition—such as motorsports, climbing, snowboarding, hiking, and other outdoor activities—and there is a significant financial and ease of use benefit to framing the right shot.  It was inconvenient, if not impossible, during these activities to connect a laptop computer to the camera to assess the image being captured and ensure that the angle and settings were optimum.

13. The claimed inventions were initially implemented with the ContourGPS.  The ContourGPS also won several awards. The ContourGPS was awarded a 2011 Consumer Electronics Show (CES) Innovations Award. Similarly, Notebooks.com recognized the ContourGPS, which identified the ContourGPS Cam & Contour Mobile App as Best Mobile Lifestyle Accessory of CES 2011.  Notebooks.com, for example, recognized with the ContourGPS and the Contour mobile app, "[w]ith Bluetooth enabled, an iPhone can become the viewfinder for a ContourGPS camera. This will allow users to adjust the composition and settings." The ContourGPS also won the 2011 Red Dot Product Design Award, which was provided in recognition of the Bluetooth wireless viewfinder and video adjustment capabilities.

14. The claimed inventions of the '954 and '694 Patents are therefore improvements to existing camera processing and computer technology.  For example, some claims recite a specific solution for generating a second preview stream that can be wirelessly transmitted to a personal device that can allow the user to change settings of the camera and/or adjust the angle of the camera based on the preview.  The '954 and '694 Patents do not merely claim a result or the mere idea of having a video image stream wirelessly sent to a portable device.  Instead, they claim a specific architecture for the camera involving, *e.g.*, a "lens," an "image sensor," a "camera processor," a "wireless connection protocol device," and a "personal portable computing device." *See* '954 claim 11; *see also* all other asserted claims (reciting similar limitations and, for the '694 claims, additionally reciting "a mounting interface" and "mount"). The asserted patents also claim specific steps performed by the various architectural elements to achieve the technologic improvement, including, *e.g.*, the image sensor "capture[s] light" and "produce[s] real time video image data," the

camera processor "generate[s] from the video image data a first . . . and a second image data stream, wherein the second image data stream is higher quality than the first," the wireless connection protocol device "send[s] the first image data stream directly to the personal portable computing device for display," the personal portable computing device "generates the control signals for the video camera," and the processor "adjust[s] one or more settings of the video camera based . . .\ [on] the control signals." *See* '954 claim 11; *see also* all other asserted claims (reciting similar limitations and, for the '694 claims, additionally reciting the "mount configured to receive the mounting interface for rotatably mounting the camera," and "the preview image allowing the user of the video camera to manually adjust an angle of the video camera").

15.     The claims of the '954 and '694 Patents involve more than well-understood, routine, and conventional activities. Generating two video streams of different quality in parallel and wirelessly transmitting the lower quality stream from a camera to a remote computer device, along with the other claimed elements, was a novel idea that Contour invented and patented. Other solutions involved after-the-fact generation of video from previously recorded video or streaming only the high quality video. These prior conventional approaches had significant drawbacks and did not achieve the same technological improvements as the '954 and '694 Patents. In the 2009 timeframe, in particular, bandwidth on personal devices was limited and also constrained by battery power limits, which rendered conventional approaches impractical. The '954 and '694 Patents, by contrast, used nonconventional mechanisms to both record the high-quality video and, in parallel, generate a lower quality video that could be transmitted wirelessly in real time to allow the user to adjust settings and/or the angle of the camera as appropriate.

16.     Contour's intellectual property of the '954 and '694 Patents is and has been used in innovative wearable and gear-mountable camera products sold under the Contour brand, such as the Contour+, Contour+2, and Contour 4K, and in mobile applications such as the Contour Connect app for iOS, Android, and Windows Phone.

17.     The '954 Patent, entitled "Portable Digital Video Camera Configured for Remote Image Acquisition Control and Viewing," was duly and legally issued on November 18, 2014. Contour is currently the owner and possessor of all rights pertaining to the '954 Patent.

18.     The '694 Patent, entitled "Portable Digital Video Camera Configured for Remote Image Acquisition Control and Viewing," was duly and legally issued on November 25, 2014. Contour is currently the owner and possessor of all rights pertaining to the '694 Patent.

19.     Wireless features of the Contour+, Contour+2, and Contour 4K video cameras that allow each camera's video images and settings to be remotely captured, previewed and controlled are described in the '954 and/or '694 Patents and set forth in one or more claims of the '954 Patent and in one or more claims of the '694 Patent.

**RELATED PROCEEDINGS**

20.     On November 25, 2014, Contour, LLC filed a suit ("the Utah Action") in the United States District Court for the District of Utah against Camp Saver, LLC, a Utah-based outdoor retailer, and Doe Defendants. On January 5, 2015, Contour, LLC filed and served on GoPro a First Amended Complaint adding GoPro as a defendant in the Utah Action. *See* First Amended Complaint, Contour, LLC v. GoPro, Inc., et al., Civil No 2:14-cv-00864 (D. Utah Jan. 5, 2015), ECF No. 4. The First Amended Complaint alleged, inter alia, direct patent infringement by GoPro of both the '954 Patent and the '694 Patent through GoPro's camera products with wireless capability, including certain models in the HERO line of cameras.  On November 30, 2015, Contour, LLC voluntarily dismissed its operative complaint in the Utah Action, without prejudice, pursuant to Federal Rule of Civil Procedure 41.

21.     On November 30, 2015, Contour, after having been assigned ownership of the '954 and '694 Patents from Contour, LLC, filed a suit ("*Contour I*") in the United States District Court for the District of Delaware against GoPro, alleging infringement of the '954 and '694 Patents through GoPro's camera products with wireless capability, including certain of the HERO line of cameras.  That case was transferred to the Northern District of California, Case No. 17-cv-04738. On August 31, 2020, the Court granted summary judgment that GoPro's accused products (HERO 2 with Wi-Fi BacPac, HERO 3 Black, HERO 3 Silver, HERO 3 White, HERO 3+ Black, HERO3+ Silver, HERO+, HERO + LCD, HERO 4 Black, HERO 4 Silver, HERO4 Session, Fusion, HERO 5 Black, HERO 5 Session, HERO 6 Black) directly infringe claim 11 of the '954 Patent. *See Contour I*, Dkt. 444 at 10.

22.     On April 20, 2015, GoPro filed petitions for *inter partes* review of certain challenged claims of the '954 Patent (IPR 2015-01080) and the '694 Patent (IPR 2015-01078) with the Patent Trial and Appeal Board ("PTAB").  On October 28, 2015, the PTAB instituted an *inter partes* review as to claims 1, 2, and 11–30 of the '954 Patent, but denied institution on claims 3–10, finding that GoPro had not shown a reasonable likelihood of prevailing on its assertion that claims 3–10 were unpatentable.  The PTAB also instituted an *inter partes* review as to claims 1–20 of the '694 Patent on October 28, 2015.   On July 31, 2019, the PTAB issued its final decision in both IPRs, finding that GoPro had failed to prove, by a preponderance of the evidence, that claims 1, 2, and 11–30 of the '954 Patent and claims 1–20 of the '694 Patent were invalid.

**GOPRO'S INFRINGEMENT**

23.     GoPro makes, uses, offers to sell, sells, and/or imports (or directs or induces others to make, use, offer to sell, sell, and/or import) camera products (the "Infringing Products") in the United States, that infringe, either literally or under the doctrine of equivalents, at least one claim of the '954 Patent and at least one claim of the '694 Patent.

24.     The Infringing Products include at least the HERO 7 Black, HERO 7 Silver, HERO 7 White, HERO 8 Black, HERO 9 Black and MAX cameras.

25.     GoPro makes, uses, offers to sell, sells, and/or imports (or directs or induces others to make, use, offer to sell, sell, and/or import) software, which used to be called the "GoPro App" and now appears to have been recently rebranded as "GoPro Quik" (the "GoPro App") and/or camera accessories, such as SD cards and mounts, in the United States, that when used in combination with the Infringing Products, either literally or under the doctrine of equivalents, at least one claim of the '954 Patent and at least one claim of the '694 Patent.

26.     GoPro advertises the Infringing Products as on sale through its website, GoPro.com.

**GOPRO'S INDUCEMENT**

27.     Others, including end users, endorsers, suppliers, distributors and resellers of the Infringing Products, have engaged and continue to engage in direct infringement of the '954 and '694 Patents.

28.     GoPro, with knowledge of the '954 and '694 Patents and that the making, using,

offering to sell, selling, and/or importing Infringing Products in the United States infringe the '954 and '694 Patents since at least January 5, 2015 and during the course of *Contour I*, has induced and continues to induce others to infringe the '954 and '694 Patents by requiring others to manufacture, use, sale and/or offer for sale the Infringing Products. GoPro induces others to infringe the '954 and '694 Patents by entering into, performing, and requiring performance under manufacturing, endorsement, supply, distribution, and/or reseller agreements with others.

29. GoPro advertises, demonstrates, and/or recommends infringing uses and/or provides instructions on how to engage in infringing uses of the Infringing Products through various forms and by various means, including but not limited to advertisements, websites, videos, product brochures, and product manuals.

30. GoPro actively induces infringement of at least one claim of the '954 Patent and at least one claim of the '694 Patent by inducing infringing use of the Infringing Products with the GoPro App by, inter alia, instructing others how to engage in infringing uses (*e.g.*, on websites, Twitter, YouTube, product manuals and other media) and by entering into, performing and requiring performance under manufacturing, endorsement, supply, distribution, and/or reseller agreements with others that require use of the GoPro App in combination with the Infringing Products.

31. GoPro provides instructions on how to wirelessly view image data and control its cameras in the product manuals available for download on GoPro.com. Specifically, each manual provides instructions on how to connect a GoPro device to a smartphone or tablet via the GoPro App. *See, e.g.*, https://gopro.com/content/dam/help/hero7-black/manuals/HERO7Black_UM_ENG_REVA.pdf ("HERO 7 Black Manual") at 58; https://gopro.com/content/dam/help/hero7-silver/manuals/HERO7Silver_UM_ENG_REVA.pdf ("HERO 7 Silver Manual") at 42; https://gopro.com/content/dam/help/hero7-white/manuals/HERO7White_UM_ENG_REVA.pdf ("HERO 7 White Manual") at 41; https://gopro.com/content/dam/help/hero8-black/manuals/HERO8Black_UM_ENG_REVB.pdf ("HERO 8 Black Manual) at 76; https://gopro.com/content/dam/help/hero9-black/manuals/HERO9Black_UM_ENG_REVA.pdf ("HERO 9 Black Manual") at 85; https://gopro.com/content/dam/help/max/manuals/MAX_UM_ENG_REVA.pdf ("MAX Manual") at

59.

32.     GoPro's website for the GoPro App, as of March 11, 2021, shows GoPro recommending the use of the GoPro app to "[t]ransfer wirelessly to your phone, frame shots, start recording, adjust settings—the app does it all."  https://gopro.com/en/us/shop/softwareandapp.

33.     GoPro has an account on the social media website Twitter.com ("Twitter") using the handle @GoPro. GoPro has approximately 2.1 million followers on Twitter, as of March 11, 2021. GoPro uses Twitter to promote the remote control and viewing features of the infringing GoPro cameras and GoPro App.

34.     For example, on October 5, 2019, GoPro issued a tweet advertising that the GoPro App allows users to "[c]ontrol your #GoPro from your phone." https://twitter.com/GoPro/status/1180550817004347397.

35.     GoPro has multiple YouTube.com ("YouTube") channels, including GoPro, with approximately 10.3 million subscribers, and GoPro Tips with approximately 272,000 subscribers.

36.     Posted on the GoPro YouTube accounts are links to step-by-step videos instructing users how to wirelessly connect to a GoPro camera for remote control and viewing.  For example, on February 19, 2020, the GoPro Tips account posted a video entitled "GoPro: Pairing to the GoPro App | Quick Start Tutorial" which advertises features such as "[n]ow you can check out a live preview of your shot" and "change settings, presets and more." https://www.youtube.com/watch?v=kEbd7cVWniw.

**GOPRO'S CONTRIBUTORY INFRINGEMENT**

37.     GoPro offers to sell, sells, and/or imports in the United States components, including but not limited to cameras, camera accessories and/or the GoPro App that are a part of at least one claim of the '954 Patent and at least one claim of the '694 Patent and which have no substantial non-infringing use, knowing that the components are especially made or especially adapted for use in a direct infringement of the '954 and '694 Patents.

38.     Others, including end users, endorsers, suppliers, distributors and resellers of the Infringing Products, have engaged and continue to engage in direct infringement of the '954 and '694 Patents.

39.     GoPro, with knowledge of the '954 and '694 Patents and that the making, using, offering to sell, selling, and/or importing Infringing Products in the United States infringe the '954 and '694 Patents since at least January 5, 2015 and during the course of *Contour I*, actively contributes to direct infringement of at least one claim of the '954 Patent and at least one claim of the '694 Patent by others, either literally or under the doctrine of equivalents, by offering to sell, selling, and/or importing in the United States cameras and/or camera accessories, such as SD cards and mounts, and providing and/or making available for download the GoPro App for use with the Infringing Products.

40.     Websites, advertising materials, user manuals, and other evidence shows that GoPro contributes to direct infringement by supplying cameras, camera accessories, and/or the GoPro App for use with the Infringing Products.

41.     The GoPro Infringing Products are especially made and/or especially adapted for use with the claimed invention of at least one claim of the '954 Patent and at least one claim of the '694 Patent and are not a staple article or commodity of commerce suitable for substantial non-infringing use.

42.     The GoPro App is especially made and/or especially adapted for use with the claimed invention of at least one claim of the '954 Patent and at least one claim of the '694 Patent and is not a staple article or commodity of commerce suitable for substantial non-infringing use.

43.     On information and belief, any non-infringing use of the GoPro Infringing Products in combination with the GoPro App and/or camera accessories, such as SD cards and mounts, would be unusual, far-fetched, illusory, impractical, occasional, aberrant, or experimental.  The GoPro Infringing Products are designed to be used with the GoPro App and/or camera accessories, such as SD cards and mounts, and GoPro repeatedly touts the benefits of using the GoPro Infringing Products together with the GoPro App and/or these camera accessories.

**GOPRO'S KNOWLEDGE OF INFRINGEMENT & ITS WILLFUL INFRINGEMENT**

44.     Upon information and belief, GoPro copied Contour's innovative products and has willfully infringed Contour's patents.

45.     Provisional application No. 61/382,404, the priority application for both the '954 and

'694 Patents, was filed on Sept. 13, 2010. The ContourGPS, an embodiment of the patent which had Bluetooth connectivity, was launched on or around the same day. *See* IPR2015-01078, Ex. 2006, Decl of R. Mander, Ph.D., at ¶ 22.

46. On January 5, 2011, Contour announced "a built-in Bluetooth chip in the ContourGPS and a mobile app that together enable your phone to become a live viewfinder. Now, you can see what your camera sees while configuring your settings, all from the most remote locations." https://www.engadget.com/2011-01-05-contour-adds-live-viewfinder-to-its-contourgps-helmet-cam-real.html. This functionality was publicly demonstrated that same day at CES. *See* IPR2015-01078, Ex. 2006, Decl of R. Mander, Ph.D, at ¶ 26.

47. On or around May 13, 2011, Contour released the Contour+ that "buil[t] on the popular ContourGPS model with added connectivity. . . . The Contour+ can connect to smartphones via Bluetooth, creating a wireless viewfinder for the camera. Camera settings can also be adjusted via the Bluetooth connection." https://www.24-7pressrelease.com/press-release/213108/introducing-the-new-contour-camera-available-at-launchhelmetcamscom.

48. GoPro subsequently tested Contour's products and, upon information and belief, copied Contour's patented invention of the '954 and '694 Patents.

49. GoPro launched its HERO 2 camera in October 2011. A full year later, GoPro first released its mobile application, in October 2012. As such, it took GoPro almost two years to replicate the Contour technology that was then patent-pending.

50. On June 26, 2014, GoPro went public. At the time of the IPO, CEO Nicholas Woodman held about 56.5M Class A shares. Jun. 25, 2014 SEC Form 3, https://www.sec.gov/Archives/edgar/data/1500435/000120919114043673/xslF345X02/doc3.xml.

51. On September 25, 2014, a "Notice of Allowance" published for the '954 Patent.

52. Weeks later, on October 2, 2014 Mr. Woodman moved 5.8M shares, worth over $450M, to a brand new charity, the Jill + Nicholas Woodman foundation, sidestepping a rule that prohibits insiders from selling stock within the first 180 days after an IPO. https://money.cnn.com/2014/10/02/investing/gopro-charity-shares/index.html. In an August 2018 article, the New York Times noted "four years on, there is almost no trace of the Woodman

Foundation, or that $500 million" and explained that "Mr. Woodman avoided paying capital gains taxes on that $500 million worth of stock, a figure that most likely would have been in the tens of millions of dollars. He was also able to claim a charitable deduction that most likely saved millions of dollars more, and probably reduced his personal tax bill for years to come."

https://www.nytimes.com/2018/08/03/business/donor-advised-funds-tech-tax.html.

53.     On October 29, 2014, the Patent Office released an "Issue Notification" stating that the '954 Patent would issue on November 18, 2014.

54.     Weeks later, on November 10, 2014, Nick Woodman sent an email to GoPro employees informing them he planned to sell a portion of his GoPro holdings. https://www.businessinsider.com/gopro-ceo-letter-to-employees-2014-11.  In connection with that plan, by November 20, 2014, he submitted the SEC-required paperwork to sell over 6M Class A shares. Nov. 19, 2014 SEC Form 4, https://www.sec.gov/Archives/edgar/data/1500435/000120919114070454/xslF345X03/doc4.xml.

55.     On November 18, 2014, the '954 Patent issued.  On November 25, 2014, the '694 Patent issued.

56.     Contour, LLC contacted GoPro about its infringement of the two patents during the last week of November 2014, and thus GoPro has known of the claim of infringement since at least that date.

57.     On November 25, 2014, Contour, LLC filed the Utah Action.

58.     Also on November 25, 2014, one week after the '954 Patent issued, Nick Woodman sold over 4M Class A GoPro shares and received over $295M. Nov. 25, 2014 SEC Form 4, https://www.sec.gov/Archives/edgar/data/1500435/000120919114071591/xslF345X03/doc4.xml.

59.     On December 3, 2014, Nick Woodman sold 837,647 Class A shares and received over $60M. Dec. 3, 2014 SEC Form 4, https://www.sec.gov/Archives/edgar/data/1500435/000120919114073264/xslF345X03/doc4.xml. Upon information and belief, Mr. Woodman made no disclosure of the '954 and '694 Patents in conjunction with any of these transfers or sales of his shares.

60.     For approximately the next three years, Mr. Woodman did not sell any shares.  And it

does not appear that Mr. Woodman has purchased any shares since December 3, 2014 despite the stock price significantly dropping.  https://www.sec.gov/cgi-bin/own-disp?action=getowner&CIK=0001610500.

61.    Mr. Woodman and GoPro have known of GoPro's infringement no later than January 5, 2015 when GoPro was properly served with a copy of the First Amended Complaint in the Utah Action.  Since at least this date, GoPro has had actual notice of the '954 and '694 Patents and that its Infringing Products infringe one or more claims of the asserted patents.

62.    Since learning of Contour's patents, and with full knowledge of its infringement, GoPro has willfully infringed by releasing numerous infringing products, including the HERO+ LCD, HERO+, HERO 5 Black, HERO 5 Session, HERO 6 Black, Fusion, HERO 7 Black, HERO 7 Silver, HERO 7 White, HERO 8 Black, HERO 9 Black, and MAX cameras, as well as releasing new camera mounts compatible with these infringing cameras.

63.    On October 26, 2016, the PTAB issued a final written decision finding that GoPro had not shown by a preponderance of the evidence, that claims 1, 2, and 11–30 of the '954 Patent and claims 1–20 of the '694 Patent were unpatentable.  After an appeal and remand, on July 31, 2019, the PTAB issued its final decision in GoPro's IPRs, finding that GoPro had failed to prove, by a preponderance of the evidence, that claims 1, 2, and 11–30 of the '954 Patent and claims 1–20 of the '694 Patent were invalid.

64.    From its first knowledge of the '954 and '694 Patents and the infringement claim, through twice failing at its attempts to invalidate the '954 and '694 Patents, GoPro made no disclosure of the contingent liability to its shareholders and lenders, upon information and belief.

65.    From its first knowledge of the '954 and '694 Patents and the infringement claim, up through its failed attempts to invalidate the '954 and '694 Patents in the PTAB, and throughout the *Contour I* case, with full knowledge of the '954 and '694 Patents and their validity, GoPro willfully infringed by continuing to sell infringing cameras, and introducing new infringing cameras, including at least the HERO 7 Black, HERO 7 Silver, HERO 7 White, HERO 8 Black, HERO 9 Black, and MAX cameras.

66.    On August 31, 2020, the Court in the *Contour I* case granted summary judgment that

GoPro's accused products (HERO 2 with Wi-Fi BacPac, HERO 3 Black, HERO 3 Silver, HERO 3 White, HERO 3+ Black, HERO3+ Silver, HERO+, HERO + LCD, HERO 4 Black, HERO 4 Silver, HERO4 Session, Fusion, HERO 5 Black, HERO 5 Session, HERO 6 Black) directly infringe claim 11 of the '954 Patent. *See Contour I*, Dkt. 444 at 10. Since that date, GoPro willfully infringed by continuing to sell infringing cameras, including at least the HERO 8 Black, HERO 9 Black, and MAX cameras.

67.     On January 30, 2020, GoPro's CEO Nicholas Woodman testified that the "functionality of generating higher- and lower-quality video streams, saving the high-quality stream to storage and streaming the lower-quality video to an external device" had been included in the "HD HERO2 and in the HD HERO3 after it and every subsequent GoPro since." *Contour I*, Dkt. 493-8 at 111:13–112:6. He repeated that "each GoPro camera since the HD HERO2 has had that functionality." *Id.* at 112:20–113:23. As noted above, many of the products since the HD HERO 2 were released after GoPro obtained knowledge of its infringement, after the PTAB rejected GoPro's invalidity arguments, and/or after the *Contour I* court granted summary judgment of direct infringement, including all of the Infringing Products in this Complaint.

68.     On January 31, 2020, GoPro's corporate representative Tyler Gee testified that "since learning of the patents in suit in January 2015" that "GoPro has not designed around the patents in suit." *Contour I*, Dkt. 493-6 at 231:14–25. As noted above, many of the products available as of this date, which GoPro had not redesigned, were released after GoPro obtained knowledge of its infringement, after the PTAB rejected GoPro's invalidity arguments, and/or after the *Contour I* court granted summary judgment of direct infringement, including at least the HERO 7 Black, HERO 7 Silver, HERO 7 White, HERO 8 Black, and MAX.

69.     After the Court granted summary judgment of infringement in *Contour I*, GoPro released the HERO8 Black, MAX, and HERO 9 Black. Sometime later GoPro temporarily removed or blocked certain settings on the GoPro app, such as "Protune settings or camera beep volume," and they "are no longer available." *See* https://gopro.com/en/us/news/gopro-app-protune-feature-updates. However, removing such settings does not impact GoPro's infringement of the '954 and '694 Patents, as shown in the attached exemplary infringement charts, because (1) the claim

limitations are still met and (2) GoPro did not make any changes that affect the functionality of the processors on the Infringing Products, upon information and belief, because the camera processor and wireless connection protocol device of the Infringing Products are still configured to receive the control settings required by the claims.  *See* https://apps.apple.com/us/app/ble-remote-for-gopro/id1526486112;

https://play.google.com/store/apps/details?id=ch.jaromeyer.gopro_ble_remote&hl=en_US&gl=US;

https://www.youtube.com/watch?v=pSnDG3CzqyA&t=181s; https://apps.apple.com/us/app/camera-tools-for-gopro-heros/id1539331570#?platform=iphone;

https://play.google.com/store/apps/details?id=com.toolsforgopro.cameratools&hl=en_US&gl=US.

On the HERO 8 Black and HERO 9 Black, "users [can also] customize up to 10 capture settings," which allows the user to select different resolutions, frame rates, and "preferred Protune settings" from one capture setting to the next on the camera.  A user can then "use the GoPro app to easily toggle between custom presets."  *See* https://gopro.com/en/us/news/gopro-app-protune-feature-updates.

70.     Removing the "Protune settings [and] camera beep volume" has also resulted in significant customer complaints, indicating even this flawed change is not acceptable to GoPro's customers.  For example:

- 01/08/2021: "That's so stupid. Why would they remove it? Its so much easier to tune through the app while youre using the gopro."

- 01/09/2021: "I'm a new user of the GoPro and having access to the settings in the app is invaluable, makes it very easy to change and verify things."

- 01/09/2021: "This is idiotic. I'm cancelling my GoPro subscription."

- 01/14/2021: "Seriously...Who thought this was a good idea?  This is an essential feature of the app!"

- 01/15/2021: "Expect more of this, this is just the beginning. GoPro really doesn't care about their customers."

- 02/09/2021: "Please make another update for the GoPro app (mobile) to return ProTune settings because it is really important. I've bought The Remote because I

1    thought it could control protune but it can't. I've bought brand new GoPro Hero8 and

2    GoPro hero 9 with all the mods available and now I can't work with them. WHY?"

3  *See, e.g.*, https://community.gopro.com/t5/GoPro-Apps-for-Mobile/Protune-settings-removed-from-

4  app/td-p/927878.

5        • 03/15/2021: "GoPro has removed Protunes from the app, forcing you to use your

6          camera! Extremely inefficient, especially with the unusable GoPro 9 screen. They

7          will be loosing a lot of customers . . . !!"

8  *See, e.g.*, https://apps.apple.com/us/app/gopro-app/id561350520#see-all/reviews.

9        71.    GoPro has acted like a pirate, maliciously taking Contour's intellectual property, and

10 demonstrating willful, bad-faith infringement.  GoPro refused to take a license or even attempt to

11 avoid infringement for more than a year after failing to invalidate the '954 and '694 Patents and

12 being found to infringe claim 11 of the '954 Patent, while, on information and belief, selling millions

13 of infringing cameras.

14                  **HARM TO PLAINTIFF CAUSED BY GOPRO'S INFRINGEMENT**

15       72.    Each of GoPro's Infringing Products directly infringes one or more claims of each of

16 the '954 and '694 Patents.

17       73.    On information and belief, GoPro holds the largest share of the action camera market.

18       74.    On information and belief, GoPro's share of the action camera market continues to

19 grow due to sales of its Infringing Products that infringe one or more claims of each of the '954 and

20 '694 Patents.

21       75.    On information and belief, GoPro's success in capturing significant market share is

22 attributable to its sales of Infringing Products that infringe one or more claims of each of the '954

23 and '694 Patents.

24       76.    GoPro's sale of Infringing Products without a license has harmed Plaintiff, at least by

25 depriving it of a reasonable royalty.

26       77.    Since at least January 5, 2015, GoPro, with knowledge of the '954 and '694 Patents

27 and its infringement, has willfully infringed and continues to willfully infringe the '954 and '694

28 Patents.

**CLAIM I: DIRECT INFRINGEMENT OF THE '954 PATENT**

78.     Plaintiff incorporates by reference the allegations set forth in paragraphs 1–77 as if fully set forth herein.

79.     The '954 Patent has at all times subsequent to its issue date been fully enforceable and is now fully enforceable.

80.     GoPro has been, and continues to be, making, using, offering to sell, selling, and/or importing in the United States, or directing others to make, use, offer to sell, sell, and/or import in the United States, Infringing Products, which come within the scope of one or more claims of the '954 Patent. GoPro has thereby infringed at least claim 11 of the '954 Patent in violation of 35 U.S.C. § 271(a).

81.     GoPro has been, and continues to be, making, using, offering to sell, selling, and/or importing in the United States, or directing others to make, use, offer to sell, sell, and/or import in the United States, Infringing Products, which come within a range of equivalents of one or more claims of the '954 Patent. GoPro has thereby infringed the '954 Patent in violation of 35 U.S.C. § 271(a).

82.     Exemplary infringement charts, showing infringement of claim 11 for each Infringing Product, are attached as Exhibits 3 (HERO 7 Black), 4 (HERO 7 White), 5 (HERO 7 Silver), 6 (HERO 8 Black), 7 (MAX), and 8 (HERO 9 Black).

83.     The making, using, offering to sell, selling, and/or importing Infringing Products by GoPro has been without authority or license from Plaintiff and in violation of Plaintiff's exclusive rights under the '954 Patent.

84.     Plaintiff has been injured and damaged monetarily and otherwise by GoPro's infringement of the '954 Patent. GoPro is therefore liable to Plaintiff for the damages suffered by Plaintiff, in an amount not less than a reasonable royalty.

85.     GoPro's continuing acts of infringement are willful, entitling Plaintiff to increased damages under 35 U.S.C. § 284 and to attorneys' fees and costs incurred in prosecuting this action under 35 U.S.C. § 285.

86.     By this action, Plaintiff seeks recovery of their damages pursuant to 35 U.S.C. § 284

including, without limitation, a reasonable royalty.

**CLAIM II: INDUCED INFRINGEMENT OF THE '954 PATENT**

87.     Plaintiff incorporates by reference the allegations set forth in paragraphs 1–86 as if fully set forth herein.

88.     GoPro has indirectly infringed and is still indirectly infringing the '954 Patent in violation of 35 U.S.C. § 271(b), by actively inducing infringement of at least claim 11 of the '954 Patent.

89.     GoPro, with knowledge that the Infringing Products infringe the '954 Patent, has induced and continues to induce others to directly infringe the '954 Patent by requiring one or more its endorsers, suppliers, distributors and resellers to make, use, offer to sell, sell, and/or import the Infringing Products in the United States. At the latest, GoPro became aware of the '954 Patent and its infringement when it was served with the First Amended Complaint in the Utah Action, yet GoPro continues to actively and knowingly induce others to directly infringe the '954 Patent.

90.     Despite knowledge that the Infringing Products infringe the '954 Patent, GoPro continues to take numerous active steps to encourage and aid and abet others' direct infringement of the '954 Patent.  These active steps include, inter alia, encouraging others to manufacture, use, offer to sell, sell, resell, and/or import Infringing Products in the United States, advertising the availability of Infringing Products for purchase, advertising infringing uses and/or instructing how to engage in infringing uses of the Infringing Products (e.g., on websites, Twitter, YouTube, product manuals and other media), demonstrating and recommending infringing configurations and uses, and providing instructions and answering questions on infringing uses.

91.     Plaintiff has been injured and damaged monetarily and otherwise by GoPro's indirect infringement of the '954 Patent in violation of 35 U.S.C. § 271(b). GoPro is therefore liable to Plaintiff for the damages suffered by Plaintiff.

92.     GoPro's continuing acts of indirect infringement with knowledge that the Infringing Products infringe the '954 Patent are willful, entitling Plaintiff to increased damages under 35 U.S.C. § 284 and to attorneys' fees and costs incurred in prosecuting this action under 35 U.S.C. § 285.

93.     By this action, Plaintiff seeks recovery of their damages pursuant to 35 U.S.C. § 284

1    including, without limitation, a reasonable royalty.

2                    **CLAIM III: CONTRIBUTORY INFRINGEMENT OF THE '954 PATENT**

3          94.    Plaintiff incorporate by reference the allegations set forth in paragraphs 1–93 as if

4    fully set forth herein.

5          95.    GoPro has committed and continues to commit acts of contributory infringement of at

6    least claim 11 of the '954 Patent in violation of 35 U.S.C. § 271(c), by, inter alia, offering to sell,

7    selling, and/or importing in the United States components that are a material part of the claimed

8    invention and which have no substantial non-infringing uses, knowing that the components are

9    especially made or especially adapted for use in a direct infringement of the '954 Patent.

10         96.    These acts of contributory infringement of the '954 Patent include, inter alia, offering

11   to sell, selling, and/or importing in the United States cameras, camera accessories and/or the GoPro

12   App, that are especially made and adapted for use in directly infringing the '954 Patent.

13         97.    At the latest, GoPro became aware of the '954 Patent and its infringement when it

14   was served with the First Amended Complaint in the Utah Action, yet GoPro continues to engage in

15   contributory infringement of the '954 Patent.

16         98.    Plaintiff has been injured and damaged monetarily and otherwise by GoPro's

17   contributory infringement of the '954 Patent in violation of 35 U.S.C. § 271(c). GoPro is therefore

18   liable to Plaintiff for the damages suffered by Plaintiff.

19         99.    GoPro's continuing acts of contributory infringement with knowledge that the

20   Infringing Products infringe the '954 Patent are willful, entitling Plaintiff to increased damages

21   under 35 U.S.C. § 284 and to attorneys' fees and costs incurred in prosecuting this action under 35

22   U.S.C. § 285.

23         100.   By this action, Plaintiff seeks recovery of their damages pursuant to 35 U.S.C. § 284

24   including, without limitation, a reasonable royalty.

25                    **CLAIM IV: DIRECT INFRINGEMENT OF THE '694 PATENT**

26         101.   Plaintiff incorporates by reference the allegations set forth in paragraphs 1–100 as if

27   fully set forth herein.

28         102.   The '694 Patent has at all times subsequent to its issue date been fully enforceable

1   and is now fully enforceable.

2   103.   GoPro has been, and continues to be, making, using, offering to sell, selling, and/or

3   importing in the United States, or directing others to make, use, offer to sell, sell, and/or import in

4   the United States, Infringing Products, which come within the scope of one or more claims of the

5   '694 Patent. GoPro has thereby infringed at least claim 3 of the '694 Patent in violation of 35 U.S.C.

6   § 271(a).

7   104.   GoPro has been, and continues to be, making, using, offering to sell, selling, and/or

8   importing in the United States, or directing others to make, use, offer to sell, sell, and/or import in

9   the United States, Infringing Products, which come within a range of equivalents of one or more

10   claims of the '694 Patent. GoPro has thereby infringed the '694 Patent in violation of 35 U.S.C. §

11   271(a).

12   105.   Exemplary infringement charts, showing infringement of claim 3 for the Infringing

13   Products, are attached as Exhibits 9 (HERO 7 Black), 10 (HERO 8 Black), 11 (MAX), and 12

14   (HERO 9 Black).

15   106.   The making, using, offering to sell, selling, and/or importing Infringing Products by

16   GoPro has been without authority or license from Plaintiff and in violation of Plaintiff's exclusive

17   rights under the '694 Patent.

18   107.   Plaintiff has been injured and damaged monetarily and otherwise by GoPro's

19   infringement of the '694 Patent. GoPro is therefore liable to Plaintiff for the damages suffered by

20   Plaintiff, in an amount not less than a reasonable royalty.

21   108.   GoPro's continuing acts of infringement are willful, entitling Plaintiff to increased

22   damages under 35 U.S.C. § 284 and to attorneys' fees and costs incurred in prosecuting this action

23   under 35 U.S.C. § 285.

24   109.   By this action, Plaintiff seeks recovery of their damages pursuant to 35 U.S.C. § 284

25   including, without limitation, a reasonable royalty.

26   **CLAIM V: INDUCED INFRINGEMENT OF THE '694 PATENT**

27   110.   Plaintiff incorporate by reference the allegations set forth in paragraphs 1–109 as if

28   fully set forth herein.

111.     GoPro has indirectly infringed and is still indirectly infringing the '694 Patent in violation of 35 U.S.C. § 271(b), by actively inducing infringement of at least claim 3 of the '694 Patent.

112.     GoPro, with knowledge that the Infringing Products infringe the '694 Patent, has induced and continues to induce others to directly infringe the '694 Patent by requiring one or more its endorsers, suppliers, distributors and resellers to make, use, offer to sell, sell, and/or import the Infringing Products in the United States. At the latest, GoPro became aware of the '694 Patent and its infringement when it was served with the First Amended Complaint in the Utah Action, yet GoPro continues to actively and knowingly induce others to directly infringe the '694 Patent.

113.     Despite knowledge that the Infringing Products infringe the '694 Patent, GoPro continues to take numerous active steps to encourage and aid and abet others' direct infringement of the '694 Patent.  These active steps include, inter alia, encouraging others to manufacture, use, offer to sell, sell, resell, and/or import Infringing Products in the United States, advertising the availability of Infringing Products for purchase, advertising infringing uses and/or instructing how to engage in infringing uses of the Infringing Products (e.g., on websites, Twitter, YouTube, product manuals and other media), demonstrating and recommending infringing configurations and uses, and providing instructions and answering questions on infringing uses.

114.     Plaintiff has been injured and damaged monetarily and otherwise by GoPro's indirect infringement of the '694 Patent in violation of 35 U.S.C. § 271(b). GoPro is therefore liable to Plaintiff for the damages suffered by Plaintiff.

115.     GoPro's continuing acts of indirect infringement with knowledge that the Infringing Products infringe the '694 Patent are willful, entitling Plaintiff to increased damages under 35 U.S.C. § 284 and to attorneys' fees and costs incurred in prosecuting this action under 35 U.S.C. § 285.

116.     By this action, Plaintiff seeks recovery of their damages pursuant to 35 U.S.C. § 284 including, without limitation, a reasonable royalty.

**CLAIM VI: CONTRIBUTORY INFRINGEMENT OF THE '694 PATENT**

117.     Plaintiff incorporate by reference the allegations set forth in paragraphs 1–116 as if fully set forth herein.

118.    GoPro has committed and continues to commit acts of contributory infringement of at least claim 3 of the '694 Patent in violation of 35 U.S.C. § 271(c), by, inter alia, offering to sell, selling, and/or importing in the United States components that are a material part of the claimed invention and which have no substantial non- infringing uses, knowing that the components are especially made or especially adapted for use in a direct infringement of the '694 Patent.

119.    These acts of contributory infringement of the '694 Patent include, inter alia, offering to sell, selling, and/or importing in the United States cameras, camera accessories and/or the GoPro App, that are especially made and adapted for use in directly infringing the '694 Patent.

120.    At the latest, GoPro became aware of the '694 Patent and its infringement when it was served with the First Amended Complaint in the Utah Action, yet GoPro continues to engage in contributory infringement of the '694 Patent.

121.    Plaintiff has been injured and damaged monetarily and otherwise by GoPro's contributory infringement of the '694 Patent in violation of 35 U.S.C. § 271(c). GoPro is therefore liable to Plaintiff for the damages suffered by Plaintiff.

122.    GoPro's continuing acts of contributory infringement with knowledge that the Infringing Products infringe the '694 Patent are willful, entitling Plaintiff to increased damages under 35 U.S.C. § 284 and to attorneys' fees and costs incurred in prosecuting this action under 35 U.S.C. § 285.

123.    By this action, Plaintiff seeks recovery of their damages pursuant to 35 U.S.C. § 284 including, without limitation, a reasonable royalty.

**PRAYER FOR RELIEF**

WHEREFORE, Contour respectfully requests the following relief:

A.      That this Court enter a judgment that GoPro has directly and indirectly infringed and is directly and indirectly infringing one or more claims of the '954 and '694 Patents and that such direct and indirect infringement by GoPro has been willful;

B.      That this Court enter a judgment that GoPro has induced others to infringe one or more claims of the '954 Patent and one or more claims of the '694 Patent and that such induced infringement by GoPro has been willful;

1     C.     That this Court enter a judgment that GoPro has contributorily infringed one or more

claims of the '954 Patent and one or more claims of the '694 Patent and that such contributory

infringement by GoPro has been willful;

D.     That this Court enter a judgment against GoPro awarding damages adequate to

compensate Plaintiff for the direct and indirect infringement by GoPro of the '954 Patent and '694

Patents.  Based on limited publicly available information, Contour anticipates compensatory

damages before any finding of exceptional case or willful infringement to exceed $50,000,000, and

Contour seeks enhanced damages up to three times the amount of compensatory damages for

GoPro's willful infringement.  Contour will also seek any supplemental damages for any continuing

post-verdict infringement until entry of a final judgment and cessation of such infringement;

E.     Contour seeks an ongoing royalty for GoPro's continued infringement, or a

permanent injunction;

F.     That this Court assess pre-judgment and post-judgment interest and costs against

GoPro, together with an award of such interest and costs, in accordance with 35 U.S.C. § 284;

G.     That this Court render a finding that this case is exceptional and award to Plaintiff its

costs and reasonable attorneys' fees, as provided by 35 U.S.C. § 285; and

H.     That this Court grant Plaintiff such other and further relief as the Court may deem

just, proper, and equitable.

## JURY DEMAND

Pursuant to Rule 38 of the Federal Rules of Civil Procedure, Plaintiff demands a jury trial as

to all matters so triable.

Dated:  March 26, 2021          WINSTON & STRAWN LLP

By: */s/ Matthew R. McCullough*
David P. Enzminger (SBN 137065)
Matthew R. McCullough (SBN 301330)
WINSTON & STRAWN LLP
275 Middlefield Road, Suite 205
Menlo Park, CA 94025-1203
Telephone: (650) 858-6500
Facsimile: (650) 858-6550
Email: denzminger@winston.com

1                     Email: mrmccullough@winston.com

2                     John R. Keville *(Pro Hac Vice* to be filed*)*

3                     Dustin J. Edwards *(Pro Hac Vice* to be filed*)*
William M. Logan *(Pro Hac Vice* to be filed*)*

4                     WINSTON & STRAWN LLP
800 Capital St., Suite 2400

5                     Houston, TX 77002-2925
Telephone: (713) 651-2600

6                     Facsimile: (713) 651-2700
Email: jkeville@winston.com

7                     Email: dedwards@winston.com
Email: wlogan@winston.com

8                     Attorneys for Plaintiff

9                     CONTOUR IP HOLDING, LLC

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

COMPLAINT
CASE NO. 21-CV-2143